# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SIGNATURE MEDICAL, LTD,** | : | **CIVIL ACTION** |
| **LLC, et al.,** | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | **NO. 15-3785** |
| | : | |
| **U.S. MED-EQUIP, INC.,** | : | |
| Defendant | : | |

## M E M O R A N D U M

**STENGEL, C.J.**                                                                                     September 11, 2017

In this diversity action, Co-Plaintiffs Signature Medical and Clifford Hall bring state law claims against Defendant U.S. Med-Equip, Inc., stemming from a rental agreement involving used medical equipment. The defendant filed a motion to dismiss, and the plaintiffs responded. For the following reasons, I will grant the motion in its entirety.

## I. BACKGROUND[1]

Mr. Hall is the sole owner of Signature Medical, a Pennsylvania corporation which buys, sells, repairs, and leases medical equipment. Defendant U.S. Med-Equip, owned by Greg Salario and Ghurmit Bhatia, is a Texas corporation whose business includes the purchase, sale, lease, and repair of biomedical equipment. Attorney Jeffrey Hofferman

---

[1] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiffs, as the non-moving parties, and are accepted as true with all reasonable inferences drawn in their favor.

began representing U.S. Med-Equip in August 2006, and along with Mr. Salario and Mr. Bhatia acted as an agent for U.S. Med-Equip.

Plaintiff Hall and Mr. Salario met as co-employees at Freedom Medical, Inc. They both left Freedom Medical in 2000 when they started their own separate businesses. Mr. Salario and Mr. Bhatia started U.S. Med-Equip. Mr. Hall started Signature Medical. Both businesses are involved in the renting and repairing of used medical equipment.

In October 2003, Mr. Salario contacted Mr. Hall for the purpose of renting medical equipment from Signature Medical. Mr. Hall and Mr. Salario agreed that U.S. Med-Equip would pay Signature Medical for any equipment that U.S. Med-Equip rented from Signature Medical at the current market rental value.

The amended complaint alleges that this arrangement continued until August 2006, when U.S. Med-Equip stopped paying the rent on the equipment it had rented from Signature Medical. It further alleges that U.S. Med-Equip has refused to return the equipment owned by Signature Medical, and now owes over $170,000 in past rent due.

On July 20, 2006, Freedom Medical instituted legal action in this court against twenty-three defendants, including U.S. Med-Equip, Mr. Salario, Mr. Bhatia, Signature Medical, and Mr. Hall. See Freedom Medical, Inc. vs. Thomas R. Gillespie, III, et al., Civ. No. 06-3195. One of the allegations asserted by Freedom Medical was that Mr. Hall, on behalf of Signature Medical, purchased medical equipment that he knew had been stolen from Freedom Medical. Mr. Hall vehemently denied that allegation. Freedom Medical also asserted that Mr. Bhatia and Mr. Salario knowingly obtained rental

equipment from Signature Medical and from other vendors that they knew to be stolen from Freedom Medical. They denied that allegation.

On August 17, 2006, Attorney Hofferman allegedly advised Mr. Salario and Mr. Bhatia to withhold the payment of rent owed to Signature Medical. Ronald Ashby, Mr. Hall's attorney, advised Mr. Hall that U.S. Med-Equip was suspending further payment of rental fees for equipment it had leased from Signature Medical pending the termination of the Freedom Medical litigation. U.S. Med-Equip further advised the plaintiffs that the leased equipment would be held in quarantine pending resolution of the litigation.

By 2012, most of the defendants in the Freedom Medical litigation had settled. These defendants, however, did not include Signature Medical, Mr. Hall, U.S. Med-Equip, Mr. Salario, or Mr. Bhatia.

In June 2012, Mr. Hall considered filing an affidavit in the Freedom Medical litigation formally documenting his assertion that he did not know that he had purchased medical equipment that had been stolen from Freedom Medical and correspondingly, that neither Mr. Bhatia nor Mr. Salario conspired with Mr. Hall to lease medical equipment from Signature Medical that was known to have been stolen from Freedom Medical. He recognized that such an affidavit would serve to exculpate U.S. Med-Equip, Mr. Salario, and Mr. Bhatia and possibly contribute to the end of the litigation against all of them.

The amended complaint alleges that before Mr. Hall signed the affidavit, he requested an agreement with U.S. Med-Equip, Mr. Salario, and Mr. Bhatia regarding payment of the outstanding rent owed to Signature Medical by U.S. Med-Equip. Attorney Ashby contacted Attorney Hofferman and informed him that Mr. Hall was

3

considering signing an affidavit that would exculpate U.S. Med-Equip in the Freedom Medical litigation provided that U.S. Med-Equip would agree to pay the rental owed on the medical equipment. Attorney Hofferman told Attorney Ashby that U.S. Med-Equip would pay the outstanding rent due to Signature Medical upon conclusion of the Freedom Medical litigation. Drafts of the affidavit were exchanged, and once satisfied with the language, Mr. Hall signed the final affidavit[2] on July 23, 2012. See Document #5 at 34-36.

On May 13, 2014, Attorney Sharon Cherry, the plaintiffs' new counsel, wrote a letter to Attorney Hofferman, requesting payment of U.S. Med-Equip's outstanding rental fees. She indicated that she was unaware of any legal authority that supported the withholding of amounts due to Signature Medical because of pending litigation. On the following day, Attorney Hofferman responded by email, stating that the terms of the agreement between Mr. Hall and U.S. Med-Equip were contained in the affidavit signed by Mr. Hall. The amended complaint alleges that Attorney Hofferman informed

---

[2] In the sworn affidavit, Mr. Hall indicates, *inter alia*, that, on behalf of Signature Medical, he entered into an agreement with U.S. Med-Equip "to reconcile accounts (Reconciliation) of outstanding medical equipment transactions between Signature Medical and [U.S. Med-Equip], to be determined upon resolution of the [Freedom Medical] Litigation in its entirety." See Document #5 at 34. He further stated, "Reconciliation will not include calculation of costs or attorney's fees incurred by any party to the litigation, nor will Reconciliation involve calculation of medical equipment transactions where Signature Medical and [U.S. Med-Equip] agree that the equipment at issue is not properly included in the Reconciliation because of issues related to the Litigation." Id. Mr. Hall also acknowledges that the terms of the agreement between Signature Medical and U.S. Med-Equip are set forth in the affidavit. Id.; see also Email dated July 26, 2012 from Mr. Hofferman to Greg Mathews, the attorney representing Freedom Medical in that litigation. Id. at 39 ("there is no other writing or series of writings, the entire agreement is contained in the affidavit. The language of the affidavit states that the entire agreement is set forth in the affidavit").

Attorney Cherry by telephone that the rental payments would be made upon conclusion of the entire litigation.[3]

On December 18, 2014, Attorney Cherry notified Attorney Hofferman that Mr. Hall and Signature Medical had settled with Freedom Medical, and asked when a check for the overdue rental payments might be expected. She also notified Attorney Hofferman that Signature Medical was terminating the rental agreement on the equipment and asked that the equipment be returned. On December 22, 2014, Attorney Hofferman responded requesting more specifics on the equipment, i.e., invoice and serial numbers. Attached to the amended complaint is a spreadsheet prepared by U.S. Med-Equip which lists the equipment for which U.S. Med-Equip owed rent payments to Signature Medical.

The amended complaint further alleges that it became clear to Mr. Hall as of March 19, 2015, that U.S. Med-Equip had no intention of paying Signature Medical the rental fees owed for the leased equipment. It also allegedly became clear to Mr. Hall that U.S. Med-Equip had no intention of returning the rented equipment to Signature Medical. In fact, the amended complaint insists that at the time the affidavit was negotiated and executed, Mr. Salario and Mr. Bhatia had no intention of paying Signature Medical the total rental due for the equipment leased by Signature Medical, but nevertheless willfully and intentionally lured Mr. Hall into signing the affidavit so that U.S. Med-Equip could

---

[3] A review of the docket of Civ. A. No. 06-3195 shows that the Freedom Medical litigation was closed by the court on January 13, 2015. See Document #13.

5

use the affidavit in the Freedom Medical litigation to its advantage. The fair market value of the equipment which U.S. Med-Equip has refused to return is $30,025.00.

Signature Medical and Mr. Hall filed this action against the defendant alleging fraudulent misrepresentation/fraud in the inducement in Count One, breach of contract in Count Two, unjust enrichment/quasi contract in Count Three, promissory estoppel in Count Five, and conversion in Count Six.[4]

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a

---

[4] The amended complaint does not contain a Count Four. It does contain, however, two ¶ 68's, two ¶ 69's, two ¶ 70's, two ¶ 71's, and two ¶ 72's. See Document #5.

district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips, 515 F.3d at 234-235. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

### III. DISCUSSION

**A. Count I – Fraudulent Misrepresentation/Fraud in the Inducement**

In the amended complaint, the plaintiffs allege that Mr. Hall was fraudulently induced by the defendant to execute the affidavit. The defendant moves for the dismissal of this count arguing that the amended complaint does not meet the heightened pleading

7

standards for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure.[5] I agree.

In Pennsylvania, an action for fraud, or fraudulent misrepresentation, contains the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury resulting and proximately caused by the reliance. Gibbs v. Ernst, 647 A.2d 882 (Pa. 1994). A misrepresentation need not be in the form of a positive assertion, but can be any artifice by which a person is deceived to his disadvantage and may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1252 (Pa. Super. 1983).

Like other claims alleging fraud, state common law fraud claims must comply with Rule 9(b) and be pled with particularity. Christidis v. First Pa. Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983); see also Seville Indus. Mach. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) (Rule 9(b) requires a heightened particularity in fraud pleadings to place a defendant on notice of the precise misconduct with which he is charged and to safeguard a defendant against spurious charges of immoral and fraudulent behavior). A plaintiff satisfies Rule 9(b) by pleading the date, place, or time of the fraud,

---

[5] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

8

or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004), abrogated in part on other grounds by Twombly, 550 U.S. at 557.

Here, the plaintiffs allege that, in order to induce Mr. Hall to sign the affidavit, U.S. Med-Equip agreed to pay the outstanding rent upon conclusion of the Freedom Medical litigation, even though U.S. Med-Equip had no intention of doing so:

> 36. Prior to signing the aforesaid [affidavit], Hall wanted agreement from U.S. Med, Salario, and Bhatia regarding payment of the outstanding rent owed to Signature Medical by U.S. Med.
>
> 37. Ashby thereafter contacted Hofferman and informed him that Mr. Hall was considering signing an affidavit that would exculpate U.S. Med in the Freedom Medical litigation provided that U.S. Med would agree to pay the rental owed on the medical equipment.
>
> 38. Hofferman told Ashby that U.S. Med would pay the outstanding rent due to Signature Medical upon conclusion of the Freedom Medical litigation.
> . . .
> 40. After Hofferman and Ashby agreed on the language of the affidavit, Mr. Hall signed the affidavit.

See Am.Compl.

These allegations do not refer to any specific communication or transaction by the defendant. The only fraudulent event alleged is a hearsay statement made by Attorney Ashby to Mr. Hall stating that Attorney Hofferman indicated that U.S. Med-Equip had agreed to pay the outstanding rent at the end of the Freedom Medical Litigation. See Am.Compl. ¶¶ 28-29. The amended complaint does not identify when and under what

9

circumstances Attorney Hofferman made the alleged statement. And, it does not specify the amount of outstanding rent due and exactly when U.S. Med-Equip would pay it. There is no record of this conversation other than the plaintiffs' allegation. Indeed, the affidavit itself does not confirm the plaintiffs' allegation that the defendant would pay the rent in full upon the termination of the Freedom Medical Litigation.

Instead, the amended complaint is based on the plaintiffs' subjective belief and unsubstantiated assumption that U.S. Med-Equip never intended to pay rent on the medical equipment in question. I note that even if Attorney Hofferman had made the statement that the defendant would pay the outstanding rent upon conclusion of the Freedom Medical Litigation, that statement would have been made prior to the formation of the written agreement set forth in Mr. Hall's affidavit. Further, if the statement comprised one of the terms of the agreement, then it would have been included in the affidavit which contained all of the terms of the agreement. Thus, because it was not included in the affidavit, it cannot be considered one of the terms of the agreement.

None of these allegations adequately alleges fraud with particularity against the defendant. The allegations are conclusory and do not indicate the date, time, or place of any misrepresentation, nor do they provide an alternative means of injecting precision and some measure of substantiation into the fraud allegations. Lum, 361 F.3d at 224.

I also note that the plaintiffs' allegation of fraudulent inducement is belied by the very terms of the affidavit. In Paragraph #1 of the affidavit, Mr. Hall states, "I am giving this Affidavit voluntarily and not in consideration of, or for, any agreement or settlement with plaintiff Freedom Medical or any other party to this litigation." See Document #5 at

34. Thus, Mr. Hall admits in the affidavit that he was not induced in any way into executing the agreement with the defendant, but did so voluntarily. Accordingly, because the plaintiffs' fraud allegations do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b), I will grant the defendant's motion and dismiss Count I.

### B. Count II – Breach of Contract

To support a claim for breach of contract in Pennsylvania, a plaintiff must allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damage. Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 580 (Pa.Super. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999)). The purpose of damages in a breach of contract case is to return the parties to the position they would have been in but for the breach. Pittsburgh Const. Co., 834 A.2d at 580 (citing Birth Center v. St. Paul Companies, Inc., 787 A.2d 376 (Pa. 2001)).

Here, the plaintiffs and the defendant entered into an agreement which was memorialized in Mr. Hall's affidavit dated July 23, 2012. Its terms were established by the express agreement of Mr. Salario and Mr. Hall. See Am.Compl. ¶ 64. The plaintiffs insist that the defendant breached that agreement when it failed "to pay the outstanding rental fees due." Id. ¶ 65. They indicate that the breach occurred on March 19, 2015, "when it became clear [to the plaintiffs] that [the defendant] did not intend to pay the full amount due and owing." Id. ¶ 66. I do not agree.

A careful review of the agreement in question shows that no such duty was imposed upon the defendant. Instead, the affidavit specifies, in pertinent part:

> [Signature Medical] has entered into an agreement with co-defendant U.S. Med-Equip, Inc. (USMED), the terms of which are set forth herein. ***This agreement is to reconcile accounts (Reconciliation) of outstanding medical equipment transactions between Signature Medical and USMED, to be determined upon resolution of the Litigation in its entirety.*** This agreement has in no way influenced the facts put forth in this Affidavit which is voluntary and truthful. Reconciliation will not include calculation of costs or attorney's fees incurred by any party to the litigation, nor will Reconciliation involve calculation of medical equipment transactions where Signature Medical and USMED agree that the equipment at issue is not properly included in the Reconciliation because of issues related to the Litigation.

See Document #5 at 34 (emphasis supplied). The agreement calls only for a reconciliation of outstanding medical equipment transactions between the parties, not a promise by the defendant that it would pay the outstanding rental fees due. If the plaintiffs had an expectation that the defendant would pay the outstanding rent immediately upon the conclusion of the Freedom Medical Litigation, the affidavit would have included that expectation and specified an amount to be paid. Because the plaintiffs never allege that the defendant failed to honor the agreement to reconcile the accounts, the claim of breach of contract must fail. Accordingly, I will grant the defendant's motion to dismiss Count II.

### C. Count III – Unjust Enrichment/Quasi Contract

Count III of the amended complaint alleges that the defendant has had the use and availability of the plaintiffs' equipment since March of 2006, and that it has deprived the plaintiffs of the use of the equipment which the plaintiffs could have leased or sold to

other companies. In fact, it alleges that the defendant obtained rental income from the use of the plaintiffs' equipment.

In Pennsylvania, unjust enrichment, an equitable remedy and synonym for *quantum meruit*, is a form of restitution. Powers v. Lycoming Engines, 328 F.App'x 121, 126 (3d Cir. 2009) (quoting Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. 1999). Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to the plaintiff the value of the benefit conferred. AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. 2001) (citing Schenck v. K.E. David, Ltd.., 666 A.2d 327, 328-29 (Pa. Super. 1995)). Under Pennsylvania law, a claim of unjust enrichment must allege the following elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc., 885 A.2d 1127 (Pa. Commw. 2005); see also Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985) ("[T]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.") (internal quotation omitted). "The polestar of the unjust enrichment inquiry is whether the defendant has been *unjustly* enriched; the intent of the parties is irrelevant." Limbach v. City of Philadelphia, 905 A.2d 567, 577 (Pa. Commw. 2006).

A careful review of the amended complaint reveals that there are no allegations that the plaintiffs conferred a benefit upon the defendant, that the defendant achieved a benefit, or that the defendant accepted and retained the benefit under such circumstances that retention would be inequitable without payment of value. In fact, the amended complaint indicates that:

> [the defendant] advised plaintiffs that the equipment identified by Freedom Medical as having been purchased by [the plaintiff] and subsequently leased to [the defendant] would be held in quarantine pending resolution of the Freedom Medical litigation.

See Am.Compl. ¶ 30. The defendant could not have received any benefit from equipment held in quarantine pending the Freedom Medical litigation. Even if it could be found that the defendant received some benefit just by the mere possession of the equipment, there is no allegation that the defendant wrongly secured or passively received that benefit so that it would be unconscionable for it to retain it. A corporation in a separate litigation had claimed that the equipment in the defendant's possession had been stolen. Until the parties were able to address that issue in the separate litigation, the equipment remained quarantined. The quarantine was not hidden from the plaintiffs. Id.

Accordingly, because the defendant was not enriched in any way from the possession of the equipment in question, this claim for unjust enrichment fails. I will grant the defendant's motion to dismiss Count III.

**D. Count Five – Promissory Estoppel**

The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 717-718

14

(Pa.Super. 2005) (citing Shoemaker v. Commonwealth Bank, 700 A.2d 1003 (Pa.Super. 1997)). In order to state a claim for promissory estoppel in Pennsylvania, a plaintiff must allege the following: (1) the promisor made a promise that it should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. Sullivan, 873 A.2d at 717-718 (quoting Shoemaker, 700 A.2d at 1006; see also Crouse v. Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000) (noting that elements of promissory estoppel claim sound in contract for purpose of determining applicable statute of limitations). Under Pennsylvania law, a plaintiff need not allege the exact, express "promise" in order to state a cause of action for promissory estoppel. See Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 266 (E.D. Pa. 2007); Straup v. Time Herald, 423 A.2d 713, 720 (Pa. Super. 1980) (describing promissory estoppel as "a flexible doctrine, to be applied . . . as the equities between the parties preponderate").

Here, in Count V, the plaintiffs allege that "Salario, on behalf of U.S. Med, promised that U.S. Med would pay the rent for the equipment it leased from Signature." See Am.Compl. ¶ 69 (second). They further allege that, "Hofferman, on behalf of U.S. Med, promised that U.S. Med would pay outstanding rent owed to Signature Medical upon conclusion of the Freedom Medical litigation." Id. ¶ 70 (second). As discussed above, these so-called promises were not reflected in the agreement between the parties. The agreement itself indicated that all of the terms of the agreement are "set forth herein." Mr. Hall, a sophisticated business owner, had the opportunity to discuss the

affidavit with counsel before signing it, and in fact, reviewed several drafts of the affidavit before being satisfied with the language contained in the one he signed. He had ample opportunity to include references to promises to pay the rent due made by the defendant. I am not persuaded that the plaintiffs could have possibly relied upon these alleged promises while at the same time agreeing to a reconciliation process as reflected in the affidavit. Accordingly, I will grant the defendant's motion to dismiss Count V.

**E. Count VI – Conversion**

In Count VI, the plaintiffs allege that the defendant "has refused to return the equipment owned by [the plaintiffs]," and that "the failure to return the equipment is a conversion." See Am.Compl. ¶¶ 75, 76. That conversion, the plaintiffs insist, "occurred on March 17, 2015, when it became clear the defendant was not going to return the equipment and pay the outstanding rent owed." Id. ¶ 78.

Under Pennsylvania law, "[t]he elements of conversion are: (1) the deprivation of another's right of property in, or use or possession of, a chattel; (2) without the owner's consent; and (3) without lawful justification." McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998). Conversion must be intentional. Parker Oil Co. v. Mico Petro & Heating Oil, LLC, 979 A.2d 854, 860 (Pa.Super. 2009). "Specific intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the rights establishes the tort." Id. The elements of conversion may be proved by circumstantial evidence. See Royal Ins. Co. (U.K.) v. Ideal Mut. Ins. Co., 649 F. Supp. 130, 137-38 (E.D. Pa. 1986).

Here, the defendant was paying rent for medical equipment owned by the plaintiff. The defendant stopped paying the rent when Freedom Medical claimed that the medical equipment had been stolen. The equipment was then placed in quarantine pending the outcome of the Freedom Medical litigation. Thereafter, the parties entered into an agreement to participate in a reconciliation process "to be determined upon resolution of the litigation in its entirety." See Document #5 at 34. The process presumably would address possession of the equipment and payment of rent due on the equipment. There is no allegation in the amended complaint that the defendant deprived the plaintiff's possession of the equipment without lawful justification. The quarantine was the result of the claims of theft brought in the Freedom Medical litigation. Further, the plaintiffs were aware of the quarantine, and have made no allegations that the defendant refused to participate in the reconciliation process as outlined in the affidavit. Accordingly, I will grant the defendant's motion to dismiss the plaintiffs' claim for conversion in Count VI.

An appropriate Order follows.